The first case on the call of the docket is agenda number 7, number 124798, Sergi Tabirta v. James J. Cummings. Counsel, Mr. Barrera, please come forward. Good morning, your honors. May it please the court. Counsel, my name is Jason Guerra on behalf of the defendants and appellants, James Cummings and Gilson Railey Corporation, I'll refer to as GILSER or GML for short. This appeal involves the question of venue, specifically Illinois' corporate venue statute, and more specifically the prong involving what constitutes an other office under the statute. The sole issue before the court is whether GILSER operates a Cook County office that falls within the parameters of an other office required to establish residency under 2-102 of the Code of Civil Procedure. The facts demonstrate that GILSER merely does not have an office in Cook County. Rather, it does. It has a part-time employee who by mere chance owns a home in Cook County. The salient question in this appeal is whether the long-time home and personal residence of James Bolton, a part-time employee of GML who performs some work out of his home, constitutes an other office under the statute and thus serves to fix venue in that county for his employer and the corporate defendant, in this case, GML. We submit that the home of an employee, of a corporate defendant, does not constitute an other office of the company. And the fact that an employee does work from his home does not transform his residence into a corporate office, especially under the facts of this case. If we are correct, the trial court and the appellate court should be reversed and this case should be transferred to a county that provides proper venue, of which there are several in this state. Mr. Rohrer, what does doing business mean as a condition and the other office condition? Why would the legislature include both as alternative ways to establish venue? I'll start with the doing business. The doing business is, per the case law, going back some time, is essentially the contacts, the business involvement that has to be in such a way to make the company local to the community, that county. And it involves several factors. I think the other office condition is merely that. Is it an office of the company? And I think that the way it's laid out in the statute, it says a registered office or an other office. And I think we're clearly talking about a bricks and mortar office of the company, acknowledging that it doesn't have to be a typical traditional office. It can be a manufacturing plant or something of that nature. Counsel, what factors should we be looking at to determine what is an other office and what is not? Your Honor, I think that there's a dearth of case law on the issue, but the case that both sides have argued throughout this appeal as being supportive is the Mellier case versus Luer Brothers. And I think that is the first and, I believe, only appellate case that lays out the definition of what they believe an other office is, but more importantly sets the framework of the factors. And in there, there's several factors. One is an ownership or some type of ownership in the property. I think that's the first and foremost one. I think without some type of ownership, whether it be true ownership, a lease, a rental, something, I think the rest of the factors seem to be overwhelming in order to establish this in an office. So ownership is one, some type of ownership. That case goes through a number of connections or some type of outward manifestation to the public that it is their office that they do business there. It may not be for customers to come to, but it is their place, such as they had their property there, full-time employees that reported there. Other employees went there to do business, namely to, in that case, it was an airplane hangar. Two full-time pilots flew people, employees, to projects and to conferences and whatnot. So there was some business going on there. It was also significant to the familiar court that they had a telephone number that was listed in the corporate defendant's name and tied to the address of the hangar. Again, an outward manifestation. It was also a big sign at the airport. It said, address, hangar, Leuer Brothers. Again, something saying, this is an office. This is somewhere where we do business. Some type of intention of the company to have an office is some of the factors. I think that's a very good framework. I think that this court could either adopt the definition of the factors in there wholesale. I think it could also be modified and made a little bit more definitive as far as the definition with some other factors added or emphasis on some factors. But the familiar court gives us a framework, if not the answer to your question. I do believe that the lower courts in this case, the appellate court and the trial court, should be reversed because otherwise, when you read through their holdings, they would effectively allow any employee of a company who does work out of their home to effectively fix venue for their employer in the county where that employee lives. As we know, that would be a drastic expansion of the venue statute in and of itself. But there's other considerations. For example, if an employee were to move, the employer might not know that. They might not need to know that. All of a sudden, the employer can get sued in a county where it literally has no connection, no relation whatsoever, but an employee moved there. They would have no idea. For larger companies, this would obviously be a significant problem. And so such a reading, as we've seen from the appellate court in this case and the trial court, the overbroad reading of the statute would drastically expand the venue statute and it would be contrary to the purpose and statutory intent of the venue statute, which this court has stated is designed to ensure that an action is brought in a location convenient to the defendant. In that same vein, other courts in the state, including this court, has pointed out that the defendant has a right to insist on proper venue. If being sued in a proper venue is an important statutory right and that a party should not be put to the burden of defending an action in a county where the party does not maintain an office or do business or where the transaction occurred. And I think that the word maintain is significant, as it's also stated in the Millier Court. Your Honors, I believe that this question of venue with regard to the other office prong, the venue statute, is a matter of first impression in this court. I am aware that in 2005, the Corral v. Mervis Industries case came before this court with this issue, and I think the court defaulted and upheld the lower court's ruling because of the complete lack of any record and sufficiency of the record. So this issue has never been addressed by this court. And again, the only appellate court that gives any instruction or guidance is the Millier Court. And the definition that they proposed is very general, which is not necessarily problematic. However, in this case, what the lower courts did is they used the definition, which, as I mentioned, can literally, arguably, include any employee doing work anywhere on behalf of this employee. Mr. Guerrero, if we find that the venue is not proper in Cook County based on other office, does this necessitate finding venue is not proper based on doing business as well? I don't believe it necessitates. I don't believe one ruling has to do with the other. I think they're two separate issues. And I'm happy to talk about the doing business aspect of it, but that's a completely different analysis, which the trial court went through and said the numbers were in line with or lower than stand-alone appellate cases as far as the doing business problem. And so while I would submit that there would not be a proper venue under either problem, it's a different analysis. The definition in Luer Brothers, 1999, says in other office, as used in the venue statute, means a fixed place of business at which the affairs of the corporation are conducted in furtherance of corporate activity. Very, very general and very broad. It goes on to say that other office includes any fixed location purposely selected to carry on an activity in furtherance of the corporation's business activities. That second part seems to be, should not be inclusive, but I think it has to be purposely selected by the company at a minimum to accomplish the goal of the statute and the statutory intent. And again, a few sentences later, it goes on and says it is inescapable that Luer Brothers maintains an office in St. Clair County. In other words, it maintains it. Not necessarily a repaired way, but it maintains it. It's an employee. It's a property. It pays the bills. It pays utilities. It has a phone number. And I think after the definition, what Mellier provides us is with the fact. And here's what they went through, many of which were mentioned. The corporate defendant leased the property in question, the hangar. That hangar housed an airplane that was registered and owned by the corporate defendant. Two full-time pilots reported to this location daily, flying employees all over the country. There was a telephone number listed in the telephone book to that address and to the corporate defendant. Also a large directory sign indicating address, property owned by the corporate defendant. Based on this evidence, I think the Mellier Court reasonably and correctly reached the conclusion that there was certainly sufficient evidence to establish that this was in fact a corporate facility and that there was business going on there. So under your analysis, counsel, the question is greater than just whether business was being transacted on behalf of the company. Oh, absolutely. Absolutely. And I think that Mellier goes through that. It doesn't specifically say that, but it goes through the analysis of the factors. Because if we think about it, if Mr. Bolton is sending emails from his home, is all that's required doing business, the proper venue for a corporate defendant would be in many counties, if not all of them, for larger corporations. You know, for example, Mr. Bolton, the evidence was that he routinely, he didn't do work at his home, but he got up and went across to the neighboring county to the Starbucks for five hours every day and did his work there. I mean, that would essentially make the Starbucks location a corporate office under just going by the definition. So I think we have to certainly look at some factors beyond that. And we take those factors and we apply the factors set forth in Mellier to the situation here. To Mr. Bolton, to his employment, to his home, if you look at Mr. Bolton's home, it's a home in a neighborhood. It's the same as the home on the left and the home on the right. No one, no neighbors, not him, not anyone in Gilstermere League, views his home as different. It doesn't look any different. He lives in that home by personal choice. He's lived in Cook County, I would say, over 50 years. In fact, he grew up in this home and recently moved back to it. Prior to that, he was living in Cook County down the street. What's important, I guess, in that aspect is he was living in the home at the time he was hired by Gilstermere. He had already lived in Cook County. Gilstermere League has no ownership interests whatsoever in his home or any of the property. They have no control. They have no right to control the property or what goes on there. They paid absolutely no expenses for his house, mortgage, utilities, internet, cell phone bill. Or expenses relating to any work he may do there. Internet bill, computer bill. While they did get a computer for him when he initially started, the evidence is that that went kaput when he purchased his own. So that was an issue at the time. But other than getting him the computer, it wasn't even around anymore. They did nothing for him to support his work. He just did it where he wanted and when he wanted. They did not give him a cell phone. They did not give him a cell phone line. He had a cell phone. He had an extension like everyone else at the company. Customer call 1-800 number. Go to the directory. If you want to talk to Mr. Bolton, you punch this. It brings you to his cell phone. There was obviously no sign in front saying this is a Gilster office. No phone number listed for this address or for Mr. Bolton associated with Gilster & Mary Lee. If you look in the phone book, his phone number, his cell phone number says J.B. Bolton. The evidence, the testimony is that from the vice president of Gilster & others is that the city or the county that Mr. Bolton lived in was not a significant, was of no significance in the hiring decision. The vice president says that if he moved to a neighboring county, it would not affect his employment. Mr. Bolton never met with customers at his house. Not a single appointment at any time. He never met with any customers, any clients. He never even met with any Gilster & Mary Lee employees. His home was not held out to the public externally in any way, shape, or form. It was not advertised as a Gilster & Mary Lee office. There was no indication, no ties to Gilster & Mary Lee and this residence where he lived. It wasn't even held out internally in the company as a Gilster & Mary Lee office or as Gilster's Cook County office. It was simply a gentleman working who lived in Cook County. And frankly, there's no evidence that Gilster & Mary Lee was even aware of what county he lived in specifically when he was hired or much less considered it to be an issue. Since his work was admittedly by phone and by email, he could do it just about anywhere. And he did do it in other places besides his home. The point is that Gilster & Mary Lee did not purposely select this location, simply where a gentleman happened to live when they hired him. It's important to point out as the ruling from the appellate court and the plaintiff may have you believe, contrary to that, when hiring Mr. Bolton, Gilster & Mary Lee was hiring a part-time employee. They were not renting a business or a space to do business. They were simply hiring an individual. It was a personal hiring decision to hire him based on his 50 years experience in the industry and it was not a real estate procurement transaction. There's no evidence of that. Gilster & Mary Lee wanted Bolton, the man, 50 years experience, not his property. The trial court ruling, I believe, had several factual findings that were not based on the evidence but based on speculation and conjecture and thus are against the manifest way of the evidence. On R7 of the record, the trial court judge indicated the issue is whether Bolton took a tax deduction for his home office on his personal tax returns. Number one, there's no evidence of that one way or the other. Even if there was, I don't know what the implications of that would be from a legal standpoint, but there's no evidence for the judge to consider that as being the issue. Also, on R8 of the trial court opinion, the judge says my assumption is if Bolton was not working on his home, he would have had to rent an office space for either him or someone else. Again, pure assumption as stated by the judge, not based on any evidence. There's no evidence one way or the other. And the trial judge ultimately said if he's serving clients on behalf of his employer out of his office, that's another office. That was the ultimate ruling and opinion, and that is only the definition. No factors apply except factors that were not at issue, were not raised, and there was no evidence of. The appellate court had the same conclusion, finding that Bolton's home was a residence satisfied under Moliere's definition of an office. Now, the problem with both the trial court and the appellate court, neither of them went through any factors whatsoever. They take the very general definition that, again, would include so many situations and say, well, he was doing work for his employer. He's at that location, that's an office. That's the main problem with both rulings. The ownership, the outward manifestation, that was not only not considered, but the appellate court specifically said in its opinion that the relevant inquiry was whether the property was a, quote, completely neglects, although mentions, the ownership issues, but does not address them, does not think it's a relevant salient issue. Again, if the court wholesale adopts the current state of the law by definition and the factors set forth in Moliere, I believe it is undisputable and undoubtedly that Mr. Bolton's home is not an office under the venue statute. If, in fact, this court chooses to rewrite or modify the definition and make it more definite and add or modify the factors, I think that that could only solidify the fact that, in fact, this office, that his home is not another office under the statute. Thank you. Mr. Guerra? Thank you, Your Honor. Thank you. Thank you, Mr. Guerra. Mr. Petrukowski? Good morning, Your Honor. My name is Gregory Petrukowski, and I represent the plaintiff in this matter, the appellee Sergio Taberta, who was injured as a result of a horrendous trucking accident in Ohio and filed his lawsuit, of course, in Cook County, where the trial court found that not only was the defendant, GML, operating another office under the purposes of the statute, but that venue was proper, and, of course, the appellate court agreed. I think that it's difficult to discuss the concept of an office without sort of picking a lane. I think first we need to decide, was this space an office? And if we look at the history of the word office, certainly what the definition was in the 70s when this law came into being, but for hundreds of years, the definition has been a place where work is done. It can be domestic purposes, administrative purposes. The tax IRS definition is also fairly similar. So an office is a little bit like obscenity. You know it when you see it. So in this case, if we can agree that there's nothing about a home that is dispositive of the operation of an office, then we can say, OK, this was an office, and we can move on to the more important question of whose office was it? Because the statute says, and as Justice Burke pointed out, it's differentiated from doing business. If we have a registered office or other office for doing business, and so if the corporation has that, we can say, OK, venue is proper. In this case, the trial court found, and the appellate court agreed, that Mr. Bolden was operating an office as an establishment, as a fixed location, in furtherance of the corporate interests. In fact, the trial court noted that the fact that GMO was lucky enough or wise enough to have someone who would operate an office on their behalf from their home, well, that's a good business decision from them, but it shouldn't excuse them from the venue folks and the venue folks in the county. Would any employee working from home be furthering the corporate activity? I'm very glad you asked that question, and the answer to that is no. I think that we're going through a pandemic right now. Many people are working at home right now. It is not our position, nor is it the way the law is written, that those people sitting at their kitchen tables have now created an office for their employee or an employer, pardon me. The difference here is Mr. Bolden has only worked in this office space, in this home, on behalf of the corporation. He moved there in 2011. That was the time he started working for defendant GMO, and he's the only employer. He's paid $56,000 a year part-time to work, and he does so from this office. So no, someone sitting at their kitchen table, there's no design. There's no creation of an office. There's no setting on the side. It's the same as if their building burned down. The court asked what factors should we look to, and I don't think it's unlike the factors one considers in an employee versus independent contractor, or it's not the corporation who's deciding if they are a contractor or an employee. It's the factors. What was the design? What are the semblances of an office? Millier said it may be but need not be a traditional office where corporate affairs are conducted, and it can also be strictly private. So if it's a home like many other homes, that wouldn't defeat this because it's strictly private. Mr. Paczkowski, then how does that apply to companies such as Amazon and Microsoft or Google, who have many employees who telecommunicate all the time? Well, I think that's the key is telecommunication. In that case, in Amazon or Google, they have parties that are using a virtual private network, so they're existing on the main headquarter company's network as if they were sitting there. Here, this is an isolated satellite office that he's running himself where he has to have his computer to check his e-mail. He has to be at his office to check his e-mail. But the company doesn't have him use their computer. The company doesn't have him do anything with their company. Well, the company supplied him with the computer, so the company gave him the computer at the same time. And that's in the record. Yes, ma'am, it is. It's on the record at E694 and E697 through 703. They further in that same part discuss that he says, I know they hired me because they needed somebody in Chicago. When you have the Amazon employee in person sitting writing code, it's irrelevant to Chicago. Now, again, it's important to remember that you do not need to be doing business to have an office, and the statute makes that clear because the statute says other office or doing business, meaning that the legislator intended on offices that were not necessarily doing business, so administrative, managerial, or client relations, which is doing here. And I think if we turn to the findings of the trial court, Judge Ehrlich said what's most important about Mr. Bolton's testimony is that the work he is doing is plainly for the benefit of his employer, that he is servicing his clients on behalf of his employer of his office, buying through his agreement with GML. The trial court also noted that Mr. Bolton called himself the Chicago point person. In Amazon or Google, they're not referring to themselves as the point person for that locale. In the record, is there an indication of how much of his time was spent in his home office versus time he spent dealing with clients? If in order to be dealing with clients, he would need to be at that home office because he's not a salesman. This is not a person who's going around with a briefcase and a laptop addressing clients. So if he wants to check an email or if he wants to access his electronic records, he has to be in his home office on the computer. The only place he could find his emails was at home? That's absolutely true. He did not have a smartphone. He did not have a tablet. If he wanted to access his email, he had to be at his office with a computer supply code. Did he also have to travel to Batavia to Aldi? That's not in the record. It was unclear what work he was or was not doing. But I think that the point about Batavia or Aldi is good because the fact that it may have been more expedient for Mr. Bolton to have had an office in Batavia or in DuPage does not change the nature of the fact that he did have an office in Cook County. So whether he could or it would have been a better idea to have an office somewhere else or, as the trial court noted, be in a strip mall somewhere, well, depending on the company, it's having the benefit of someone who's willing to give their home up to that person for an office. The definition in Mellier says fixed location, purposely selected. So that brings two questions to mind. Purposely selected by whom? And was it the fixed location that's purposely selected? So what I'm getting at is was his home purposely selected? I mean, certainly it was purposely selected by him. He was selected because he lived in the area. But when we're talking about a fixed location, are we not talking about that particular home, that particular building that was not purposely selected by the company? It was purposely selected by Mr. Bolton. Well, certainly they're mailing these checks to him. So whether it's a purposeful selection or a subsequent ratification of where he's doing his work, they're aware that he's… Well, not aware. I mean, the definition is the company is purposely selecting their fixed location. I would return to what Bolton's own words said. I would return to Bolton's line. I know they hired me because they needed somebody in Chicago. That's what he says in E694. He further, in specific discussing of Chicago, says that when new products would be available, he would be tasked with selling those products, including to his Cook County and surrounding county clients. So they're aware that he's in Chicago. And he says, I know they hired me because they needed somebody in Chicago. So your argument is the fixed location is the Chicago area, not his particular home? I would say that, yes, the fixed location is his access to the region. So the fixed location is saying it's convenient for us to have an employee in that area. We have a guy who's willing to work from his home. Let's send him a computer. He can set up. He can do what he needs to do. Now we have a representation there. But to let the company be the only party that gets to decide whether or not that is or is not their office is no different than a company deciding whether or not an individual is an employee or an individual contractor. It's up to the factors to decide that. Or else then the company has, essentially in this case, can send everybody home, not pay any rent for an office, have only home workers, and say, oh, but we're also immune to venue. And I don't think that's within the spirit of the statute that specifically says that an office is subsequent from doing business. So even if Mr. Bolton, in this case, was doing no business in Cook County, I think the statute still covers that because the statute says doing business for the office. We look at this analysis from the perspective of the company or from the perspective of the employee? Well, I think you should look at it from the perspective of the office. I think you would look at it and say, what is the creation and intent and benefit of this office? So in this case, the trial court said, well, they're clearly, plainly benefiting from his working from that office in this case. But I think you need to consider all factors. And I would say, like most difficult questions, or most questions around simple topics that get confusing, is what's the balancing test say? And in this case, the factual record indicated that he was working plainly as an employee. Haven't the court said that venue, the principle behind venue is that of convenience? What is convenient to the parties? And if that's true, and I think it is, doesn't it flow then that we should be looking at is this convenient to the company? Is this venue convenient? Outside of a form of nonconvenience, perhaps. I think a form of nonconvenience motion, which in this case, one was brought and it was denied, would be the more appropriate discussion for convenience. I think that, and we also look at Corral. Corral says that it's up to the defendants to say why venues are improper, and it's their onus to do so. And in this case, there's been no suggestion that it would be inconvenient for a company that does over $17 million in the last decade in Cook County, for it to be inconvenient for them to be in Cook County. And so, there was a couple other quick questions from the court. Justice Berkman mentioned twice the difference between the doing business concept and the other office concept. And so I would again like to be very clear that no court here, neither the trial court nor the appellate court, found the residence based merely off of the residency of an employee. Especially in the Peterson case, for example, there was one salesperson who happened to be living in a county, and in that case was doing business, and that wasn't enough to be doing business. And in this case, it wouldn't be enough to have an office. It's the simple residence. It's the concept of where is the work happening? And that work doesn't necessarily need to be doing business. Do you concede that the company under Peterson was not doing business in Cook County? Well, doing business is a different analysis. I understand that, but I'm just wondering if you – because it was raised in the white brief whether or not it was doing business. Do I think Monsanto was doing business in St. Clair County? Personally, yes, I believe they were. I think they were doing, what, over $10 million a year, and because that was 1% of their overall business, that didn't count. I do think that that probably will at some point be fought and revisited. It's certainly not necessarily relevant to these facts. But we have an employee who only worked for GML in that office. He didn't do any work for anybody else. There's no evidence in the record he did anything else in that room other than work specifically and purely for GML as their point person, self-described Chicago point person. In terms of purposeful selection, which I think is brought up, he says, again, in terms of Chicago, I was the local problem solver, and I told them I would be available for Chicago. Well, he did have face-to-face meetings with clients, not at that office, but certainly with Chicago clients and Cook County clients. And he says, I know they needed somebody in the Chicago area to take care of several accounts. They wanted somebody on a part-time basis to oversee those accounts, and regular W-2 salary employee and non-traveling salesperson. So I think to paint the picture of a person sitting typing on a laptop at home and to say the plaintiff is trying to establish an office in that scenario is certainly untrue. And, again, there's nothing about a home, about a domicile, which is mutually exclusive from an office. Are you saying that the company required him to set aside a space in his home dedicated to this endeavor? There's no evidence in the record to suggest that they required, but the trial court picked up on the strategic business arrangement of this, that they didn't have to go buy an office somewhere else for this person because they found someone willing to work from home. So is it the suggestion that the employer called and said, okay, you must have an office set aside? No, likely not. But did the conversation go, and certainly for a high-paid part-time employee at $56,000 a year, there's evidence in the trial court found that there was wisdom, in fact, is how the trial court put it. Is there any evidence in the record of any company payments for utilities or ranch or real estate taxes or whatever would be appropriate here? Sure, much like Corral v. Mervis, where identical, the record was missing on that. In that case, the court found in favor of the plaintiff. No, the record is lacking as to that. But what I will say is in 2016 at the time, there could have been a deduction. A deduction would have been proper by Gilster Mary Lee or by Mr. Bolton for that office, and that would have been allowed. Now, whether or not they took it or whether it would have been small and not worth doing, the record doesn't show that. But we do know that the IRS not considered that a home office, considered it when they looked for administrative and managerial, and a deduction would have been proper and could have been taken for that. So I think the more important question is, would they have been able to? And the answer to that is plainly yes, they would have been able to. I'd also like to return back to the Milly Report, because I think that notwithstanding our changing technology times, the Milly Report, I think, got it pretty close to right. And I think the more important line from that is another office may be but need not be a traditional office in which clerical activities are conducted. So not only is there not the business requirement consistent with the statute, but the Milly Report was envisioning a time where the changing landscape on a room in a home absolutely could be, it could count, and in this case it was pilots coming and going, and in that case it was good enough. So I think that to try and put an extra onus or an extra burden of saying, well, would it have made sense for them to be in Cook County?  And how much business were they doing, I think, is an unfair burden on the plain text of the statute. And finally, I believe I'm getting close, as I'd like to address the policy. I know we're living in strange times right now, and so the policy arguments here, I don't believe, create some massive problem where every corporation on the planet is going to have offices everywhere. This is not a case of a high-tech company. This is not a Google or an Amazon. This is an individual who could not check his e-mail but for his own computer. He had what we call today a dumb phone or a phone that could only make phone calls. This is not a run-and-gun traveling salesperson. And I think that if a high-tech company wanted to encourage remote work for one reason or another, or if the proverbial office building burns down, there are clearly steps a corporation can take to increase the factors against your creation of an office. Factors like VPNs that we discussed or technology where they're living on that network or virtual digital phones where the phone calls are coming and going from the main office. But to suggest that if, in this case, Mr. Bolton's strong facts pointing towards his office being GML's office, would somehow create a dire situation. We haven't seen it. Milliard has been around a long time, and so, too, have high-tech companies, and so, too, have people working from home. But we haven't seen a tremendous amount of case law or the abuse of the venue statute. And in this case, it's a factual-driven case. And the facts of Mr. Bolton being the Chicago point person, I know they hired me because they need somebody in Chicago. I told them I would be available for Chicago. For the last, now, ten years, his only work for Gilster and Mary Lee, and he's only done that work from that office, creates the traditional semblances. And I think we know an office when we see an office. This is clearly an office. The defendant has not even conceded that this is an office, but we can look at the definition of office and look at the facts and say, yes, this is definitely an office. And then we have to say, whose office is it? And it's certainly not Mr. Bolton's office because he's not doing any other work from that office other than the work he's doing for Gilster and Mary Lee. It's proper, and I thank Your Honors for your time. Unless there's any final questions. Thank you, Mr. Petrosky. Thank you, Mr. Guerra. Your Honors, I would like to make a few key points clear. At the end of the day, if the court decides to adopt the Moliere definition, the factors, and fuller in part, I don't know that these details that we're talking about matter a whole lot. I really don't. I acknowledge that there could be situations where a home could be an office of a company. We see it often. Someone puts a sign in the front yard, they list their phone number for a beauty shop or whatever, accountant, we see that all the time. That's not the position. More often than not, and especially in this case with these facts, it's a home and that's it. And it's nothing more. And counsel would have you believe by painting this picture that Gilster Mary Lee, that he moved to this house for Gilster or for the job, and they set up an office in his house. And that's not, there's no evidence that it's to the contrary. He lived there, he was hired. They didn't set him up with anything. They didn't pay anything besides his salary. It was an hourly. He was paid for 20, 25 hours a week. Is it true, though, that they gave him a computer? At the onset, they did because he didn't have one. And his testimony says that one cracked out, for lack of a better term, and he went ahead and got a new one at the time of this. But besides that computer, they didn't pay him for an expense or cost of his house or work or anything. Is it correct that the record would show that he could only do his job from that place? Your Honor, that was next on my list of things to address. It is absolutely not true. And the question in his deposition, and I pulled this up, do you have a computer at your residence? Yes. Do you have a home office set up? I have a computer in my house. And that's where you can respond to e-mails. Yes. And that's where you can make telephone calls. Yes. That's the extent of the questions that were asked of him. But another point on that, that also in Mr. Bolton's deposition, he was asked his e-mail. It's jboltongmail.com. He has a g-mail account. And we all know you can check those anywhere, anytime. You can be in another country and check his e-mail. And that's part of the picture that's trying to be painted here, that there was some CIA-level secure server in his house that Gilstermary Lee put there, and he had to be at this terminal for secure access. And that's not it at all. He had a laptop with a g-mail. It's also worth noting that, again, I don't know that it's definitive on anything, but to the extent that the fact that he had a g-mail e-mail is relevant, if you look at other places in the legal record, that's not most all g-mail employees have a first initial, last name, at gilstermarylee.com. He had a g-mail account. So, Gerardo, the answer is no. He could work anywhere he wanted. There's no evidence that, as I said, there's no evidence that Gilsterm knew when he was hired what county he lived in. They knew he lived in General Northern Illinois. He could have literally done his job from anywhere he worked. Gilstermary Lee didn't care. And there's no evidence that they knew where he was doing work or what county he lived in or if he moved since hiring. There's no evidence of any of this. It's speculation. There was mention about Mr. Holt referring to him as the Chicago point person or the problem solver in the Chicago area. And one, I guess what Mr. Bolton says doesn't really matter. I mean, when I tell my boss my position is my job, it doesn't really matter to the firm. It's what they say. And that's what's important here. And that's why the purposely selected language is very important. It doesn't matter what Mr. Bolton says or does. There has to be some form of intent or affirmative action taken on the part of the company to establish an office. And that's just not here. I think it's worth noting the strategic business decision to hire Mr. Bolton is exactly what I was talking about in the trial court's opinion, that was it would save them money on not renting an office. Well, that was the trial court judge's pure speculation and assumption, which he acknowledged was an assumption. And there was no evidence on what, if anything, Gilster may or may not have done if they didn't hire Bolton. But it doesn't matter because that never came to fruition. That was never an issue. But same thing with the tax deduction. The trial judge mentioned that as apparently being a somewhat definitive issue, but there was no evidence whatsoever about a tax deduction. So the judge kind of brought that in on his own accord, which I think is against the weight of the evidence, certainly. But I want to point out that Your Honor brought up the issue of convenience for the defendant, and that's what the venue statute is at the end of the day. That's why we have it. And so it really needs to go back to the corporation, what they intend, what they want, what they do, what they think, not Mr. Bolton and not unique facts twisted slightly by the courts or by counsel, but what did the company intend here? And I have not heard any evidence that from either the court, from counsel, or in the record as a whole that Gilster Mary Lee had any intention of setting up an office in Cook County or anywhere because they didn't know where he lived. They didn't know where he was doing his work. Based on the record, he could have been doing his work somewhere else. The extent of the evidence is that he could do work in his house. There's no evidence that he actually did and how much he did and whether Gilster knew or cared. Your Honor, in closing, I simply want to point out that the law in Missouri, or in Illinois, interpreting the venue statute has to be more than the bank definitions that we're familiar with. There has to be factors for a more definitive definition or probably both. We cannot go forward with these rulings because, as counsel mentioned, there has been no abuse, although it will be, because based on these rulings, files to any employee's house that does any work there, checks his e-mail on his phone. They just have to have access to an e-mail. Many people do work at home, and I don't think we want to expand the venue statute. I think if that was going to be the goal, that would be best left to the legislature. I would submit that the court declined the appellate court's and plaintiff's invitation to expand and effectively rewrite the venue statute. It would have unintended and very significant consequences. Thank you. Thank you, Mr. Farrell. Case number 124798, Sergey Tabarita v. James J. Cummings, will be taken under advisement as agenda number seven. Thank you, Mr. Guerra and Mr. Paduchowski, for your arguments this morning.